WILLIAM McLERAN *v.* PETER SHEARER.

*Statute.   Process.   Arrest.   Imprisonment for debt.*

The act of 1852, (No. 3, p. 4, laws of 1852,) in relation to arrest of defendants
in actions founded on contract, repealed the act of 1851 on the same subject
(No. 10, p. 7, laws of 1851.)  BARRETT, J., dissenting.

It is not necessary under the act of 1852, in regard to the arrest of persons in
actions on contract (Laws of 1852, No. 3, p. 4,) in order to warrant the issue
of a capias against a citizen of another of the United States, that the affida-
vit, filed by the plaintiff with the authority issuing the writ, should set forth
the affiant's belief that such person is about to *abscond* or *remove* from this
State.  It is sufficient if it alleges a belief that he is about to *leave* this State.

SCIRE FACIAS against the defendants as bail for Phineas
Stevens, a resident of the State of Illinois, arrested upon a
process against him in favor of the plaintiff.

The defendants pleaded *nul tiel record* with notice of special
matter in defence, to the effect that the plaintiff did not file a
proper affidavit as the basis of the issue of a capias against
Stevens.  The cause was tried by the court at the June Term,
1860,—POLAND, J., presiding.

It appeared that at the time the writ in favor of the plaintiff
against Stevens was issued, the plaintiff filed with the authority
signing it, his affidavit that Stevens was a resident of Illinois,
and that he (the plaintiff,) had good reason to believe and did
believe that he was about to leave this State, and had secreted
about his person or elsewhere money or other property exceed-
ing twenty dollars.  It also appeared that this same objection to
the sufficiency of the affidavit was pleaded in abatement by
Stevens in the suit and against him, and that the plea was held
insufficient on demurrer.

The court rendered judgment *pro forma* for the defendants, to
which the plaintiff excepted.

*A. J. Willard* and *A. Underwood*, for the plaintiff.

*E. A. Cahoon* and *Peck & Colby*, for the defendants.

BARRETT, J.  This, as the exceptions show, is *scire facias*
against the defendants as bail for one Stevens, who had

been previously sued and held to bail on a writ sued out as a *capias*, in virtue of the filing of an affidavit in the manner provided by the statute—said Stevens then being a resident citizen of Illinois, and the affidavit setting forth that he was about to *leave*. the term used in the act of 1851, as to citizens of another State, instead of *abscond* or *remove*, the terms used in the act of 1852 as to citizens of other States as well as of this State.

The sole question is whether the affidavit is sufficient to warrant the issuing of the writ against Stevens as a *capias;* for upon this question the defendants rest their resistance to the claim made against them as bail of said Stevens.

It is insisted in behalf of the defendants that the act of 1851 was repealed by that of 1852, and that the latter act alone is in force, and that the affidavit is not such an one as said act of 1852 requires.

A majority of the judges who heard the argument are disposed to regard the act of 1852 as superceding that of 1851, for the reason that it covers the same subject matter. For one, however, I think I could satisfy myself by holding the statute of 1851 to be unaffected by that of 1852. It seems to me that the peculiar structure of the two acts is such as not in terms to cause the one to conflict with the other. Both, in the first place, expressly prohibit arrest on writs in actions *ex contractu*, and then both proceed to provide affirmatively, that, upon the filing of an affidavit, writs may issue as *capias*, and be served accordingly — that of 1851 on the filing of an affidavit that the debtor, a citizen of another State, is about " *to leave*" this State — that of 1852 that the debtor, whether a citizen of this or another State "is about to abscond or remove from the State." It seems to me that the two acts stand very differently in their relation to each other from what they would if the matter of writs issuing as a *capias* had been introduced in the form of an *exception*, or subjunctive condition, instead of the form of an affirmative *proviso*. However this may be, in *Bank of Vergennes* v. *Barker*, 27 Vt. 244, it was held that the act of 1852, upon the filing of the affidavit in the terms therein provided, was effective upon a citizen of another State, though it was said, as is palpably true, that the terms *abscond* or *remove* " had no very appropriate reference to non-residents." This was but giving effect to the obvious inten-

tion of the legislature, in case the act of 1852 is to be regarded as repealing that of 1851, though it required of the court to exercise their prerogative of construction in order to enable the act to fulfill such intention.

Hence the court held in that case that the legislature intended by the terms *abscond* or *remove* in case of a non-resident, such absconding or removing as a non-resident was capable of making ; not necessarily a stealthy, covert departure, to answer the common idea conveyed by the word abscond, nor the impossible act of packing up and leaving a residence in this State for the purpose of taking up one in some other. In other words, it was held in that case, that the departing from or leaving the State by a non-resident is *absconding* or *removing* within the meaning of the act of 1852.

If this be so, and such be the meaning of an affidavit so drawn, certainly an affidavit drawn in equivalent terms, will fully answer the requirements of the statute. "To *leave* the State," expresses exactly the common as well as the original legal idea of the open and public departure of a person whose residence is in some other State. When the legislature use in the act of 1852 the words *abscond* or *remove* to express that same idea, we think the affidavit is not obnoxious to unfavorable criticism for using the very word that expresses the precise meaning of the legislature, without the aid of a judicial glossary.

While I concur with my brethren in this view and result, based upon the assumption that the act of 1852 repealed that of 1851, I think, for reasons that are satisfactory to my own mind, but not important for present purposes to be more fully presented, that I should prefer the view, that while the court were right in the decision of the case cited from the 27 Vt. *supra*, still the legislature did not mean to repeal the act of 1851, and hence the affidavit now in question was effective under that act.

In either view, the judgment which was rendered *pro forma* for the defendant is reversed—and unless there is some other question to be litigated, final judgment will be rendered in this court for the plaintiff, for the amount of the recognizance, or such smaller sum as the parties may agree upon. If other questions are to be litigated, the cause will be remanded to the county court.